AUG − 3 2010

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

VETERINARY VENTURES, INC.,
a Nevada Corporation

                Plaintiff,

v.

BARRY FARRIS dba SIERRA BIOSCIENCE
LLC

                Defendant.

3:09-cv-00732-RCJ-(VPC)

**ORDER**

## I.  INTRODUCTION

Plaintiff Veterinary Ventures, Inc. ("Veterinary Ventures") alleges that Defendant Barry Farris dba Sierra BioScience, LLC ("Mr. Farris") infringed on Veterinary Ventures' patents, specifically U.S. Patent No. 5,799,609 (the "'609 patent") and U.S. Patent No. 6,055,934 (the "'934 patent") (collectively, the "Patents"). Veterinary Ventures filed a complaint on December 14, 2009. (See Compl. (#1)). The complaint also states various other causes of action, including defamation, product disparagement, deceptive trade practice, intentional interference with prospective economic advantage, and unfair competition. (See id.).

Presently before the Court is Veterinary Ventures' Motion to Exceed Page Limitations of LR 7-4 (#32) and Veterinary Ventures' Motion for Preliminary Injunction (#18).[1] (See Pl.'s

---

[1] Also before the Court is Mr. Farris' Motion to Dismiss for Lack of Jurisdiction (#6) and Veterinary Ventures' Motion for Leave to File a Surreply (#20). However, Mr. Farris withdrew the Motion to Dismiss for Lack of Jurisdiction (#6) during oral argument on July 7, 2010 (#56). Therefore, Mr. Farris' Motion to Dismiss for Lack of Jurisdiction (#6) and Veterinary Ventures' Motion for Leave to File a Surreply (#20) are denied as moot.

1

1  Mot. (#18) at 6:12–17; Pl.'s Mot. to Exceed Page Limitations of LR 7-4 (#32)).  Veterinary

2  Ventures' Motion to Exceed Page Limitations of LR 704 (#32) is unopposed.  Mr. Farris filed

3  an Opposition to Veterinary Ventures' Motion for Preliminary Injunction (#27) on May 17,

4  2010, and Veterinary Ventures filed a Reply to Mr. Farris' Opposition (#34) on June 4, 2010.

5  The Court heard oral arguments on July 2, 2010.  (#56).  The Court now issues the following

6  order.

7        IT IS HEREBY ORDERED that Veterinary Ventures' Motion to Exceed Page Limitations

8  of LR 7-4 (#32) is GRANTED.  IT IS FURTHER ORDERED that Veterinary Ventures' Motion

9  for Preliminary Injunction (#18) is DENIED.  IT IS FURTHER ORDERED that Mr. Farris'

10  Motion to Dismiss for Lack of Jurisdiction (#6) is DENIED AS MOOT.  IT IS FURTHER

11  ORDERED that Veterinary Ventures' Motion for Leave to File a Surreply (#20) is DENIED AS

12  MOOT.

13  II.   **BACKGROUND**

14        Veterinary Ventures' products are continuous waterfall drinking fountains for animals.

15  These products are designed to "satisf[y] the desire for free falling water therefore enhancing

16  water intake by the animal and supporting urinary tract health, while reducing inconvenience

17  for the owner."  (Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. A at col.

18  5:26–29).  Veterinary Ventures' products make use of innovations covered by multiple patents,

19  including the '609 patent and the '934 patent.  (Pl.'s Memo. in Support of Pl.'s Mot. For Prelim.

20  Inj. (#19) Ex. A–B).

21        In response to alleged deficiencies in Veterinary Ventures' and related products, Mr.

22  Farris developed and sold products that competed with Veterinary Ventures' products, with

23  the following improvements:

24       1) the ability to be heat sterilized, 2) the ability to chill water . . . 3) the
         ability to provide a safer electrical connection . . . 4) the ability to
25       provide a more effective double in-line filtering system . . . 5) the ability
         to provide a method and applications to sterilize all the water . . . 6) the
26       ability to provide a refill system that does not support the growth of
         pathogens.
27
   (Def.'s Opp'n. (#27) at 6:9–15).  Mr. Farris filed a patent application on February 6, 2008
28

2

1   embodying these improvements.  (*See* Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj.
2   (#19) Ex. K).

3           Veterinary Ventures alleges in its complaint that the products that were developed and
4   sold by Mr. Farris infringed upon claims embodied in the '609 patent and the '934 patent.
5   (*See* Compl. (#1) at ¶¶ 20–31).

6

7   III.   LEGAL STANDARD

8           For a case arising under the patent laws, a district court must follow the precedent of
9   the Federal Circuit to the extent that they relate to patent issues or are likely to create
10  incentives for forum shopping.  *See Foster v. Hallco. Mfg. Co.*, 947 F.2d 469, 475 (Fed. Cir.
11  1991).

12          A preliminary injunction is not to be granted routinely.  *See High Tech Medical*
13  *Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1554 (Fed. Cir. 1995).  In
14  considering a motion for preliminary injunctive relief in a patent case, the court must consider
15  "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is
16  not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable
17  impact on the public interest." *Amazon.com v. Barnesandnoble.com*, 239 F.3d 1343, 1350
18  (Fed. Cir. 2001).  The Supreme Court held in *Winter v. Natural Res. Def. Council, Inc.*, that
19  even where a likelihood of success on the merits has been established, irreparable injury must
20  be more than possible, it must be likely.  129 S. Ct. 365, 376 (2008).

21

22  IV.   DISCUSSION

23          This Court grants Veterinary Ventures' Motion to Exceed Page Limitations of LR 7-4
24  (#32) because the motion is unopposed.  This Court denies Veterinary Ventures' Motion for
25  Preliminary Injunction (#18) because the likelihood of success of the case favors Mr. Farris
26  and because Veterinary Ventures has failed to establish the likelihood of irreparable harm in
27  the absence of a preliminary injunction against Mr. Farris.

28

3

**A.     Veterinary Ventures' Motion to Exceed Page Limitations of LR 7-4 (#32)**

Veterinary Ventures requests permission from this Court to file a Reply in Support of their Motion for Preliminary Injunction that exceeds the twenty-page limit imposed by LR 7-4. (*See* Pl.'s Mot. to Exceed Page Limitations of LR 7-4 (#32)). Pursuant to LR 7-4, "[r]eply briefs and points and authorities shall be limited to twenty (20) pages, excluding exhibits." Veterinary Ventures has contacted Mr. Farris and the parties have agreed to a maximum limit of twenty-five pages.  Under LR 7-2(d), "[t]he failure of a moving party to file points and authorities in support of the motion shall constitute a consent to the denial of the motion." LR 7-2(d).  As Mr. Farris did not file an opposition, this motion is unopposed.

Veterinary Ventures' Reply has been filed and is thirty-one pages in length, but twenty-five pages in length excluding the cover page, table of contents, and table of authorities.  LR 7-4 requires that a table of contents and table of authorities be included in any briefs or points and authorities, but does not specify whether such table of contents and table of authorities should be included in the counting of any page limitation. *See* LR 7-4.  Nevertheless, the Court has the authority to modify or relax this rule. *See, e.g., Gennock v. Warner-Lambert Co.*, 208 F. Supp.2d 1156, 1158 (D. Nev. 2002).  Given that the motion is unopposed, the motion is granted and Veterinary Ventures' Reply is accepted as filed.

**B.     Motion for Preliminary Injunction (#18)**

      **1.     Reasonable likelihood of success on the merits**

At the preliminary injunction stage, it is the moving party that bears the burden of establishing a likelihood of success. *Nutrition 21 v. U.S.*, 930 F.2d 867, 869 (Fed. Cir. 1991). To establish a likelihood of success on the merits, Veterinary Ventures must show that it will "likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). In order to defeat a motion for preliminary injunction on the issue of invalidity, Mr. Farris need only raise a "substantial question" of invalidity. *Amazon.com*, 239 F.3d at 1359.

On the other hand, "an assessment of the likelihood of infringement, like a determination of patent infringement at a later stage in litigation, requires a two-step analysis."

1   *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). "First, the court
2   determines the scope and meaning of the patent claims asserted . . . Secondly, the properly
3   construed claims are compared to the allegedly infringing device." *Id.* (quoting *Cybor Corp.*
4   *v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*)).

5           In evaluating the scope and meaning of a patent claim, the patent specification must
6   enable those skilled in the art to make and use the full scope of the claimed invention without
7   undue experimentation based on the underlying facts. *See Genentech, Inc. v. Novo Nordisk*
8   *A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997). A patent's claim is read with the ordinary and
9   customary meaning that the claim would have to a person of ordinary skill in the art at the time
10  of the invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en*
11  *banc*). In analyzing the scope of a patent claim, one does not "read a limitation into a claim
12  from the written description." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243,
13  1248 (Fed. Cir. 1998). A specification within the patent may be brought in to shed light on the
14  meaning of specific claims, but such meaning must accord with the words of the claims
15  themselves. *Id.* Hence, a patent claim does not stand alone, but "must be read in view of the
16  specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman v.*
17  *Westview Instruments, Inc.*, 52 F.3d 967, 979 (1995), (*en banc*), *aff'd*, 517 U.S. 370 (1996)).
18  If any element of the asserted claims is missing from the accused device, there is no likelihood
19  of success sufficient to support a preliminary injunction. *See, e.g., High Tech Medical*
20  *Instrumentation*, 49 F.3d at 1555–56 (reversing grant of preliminary injunction where element
21  of claim was missing from accused device).

22                          a.      '609 Patent

23                          i.      **Prior Art, Obviousness, and Prior Adjudication**

24          Mr. Farris asserts that prior art makes Veterinary Ventures' patents invalid because
25  prior art obviates the features that make Veterinary Ventures' products unique and/or superior.
26  (*See* Def.'s Opp'n. (#27) at 11:13–14:9). A patent is valid for obviousness "if the differences
27  between the subject matter sought to be patented and the prior art are such that the subject
28  matter as a whole would have been obvious at the time the invention was made to a person

                                                5

1   having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).
2   Predictable variations and predictable applications of prior art to similar products likely suffer
3   from obviousness, unless the actual application is beyond the skill of an ordinary person
4   skilled in the art. *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007). This reasoning
5   extends to combinations of prior art. "The combination of familiar elements according to
6   known methods is likely to be obvious when it does no more than yield predictable results."
7   *Id.* at 416. However, a patent that is a combination of various elements is not obvious simply
8   because each of the elements were known through prior art. *Id.* at 418. Many courts find
9   relevant "whether there was an apparent reason to combine the known elements in the fashion
10  claimed by the patent at issue." *Id; see also Lucent Tech. Inc. v. Gateway, Inc.*, 509 F.
11  Supp.2d 912, 933–34 (S.D. Cal. 2007).

12      Here, prior inventions required that animals be trained to use and/or operate the
13  devices, a continuous aerated flow of water was not as apparent to the animal, connection to
14  pressurized water supply was required, the movement of the water did not conform to known
15  animal preferences, etc. (*See* Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex.
16  A at cols. 3:32–4:34). Veterinary Ventures' products allegedly resolved such issues and
17  provided a distinct improvement over the prior art through unique features such as a continual
18  flow of free-falling water, making a pressurized water supply and discharge outlet
19  unnecessary, portability, lack of waste, making it unnecessary for animals to learn to use or
20  operate the products, aeration of the water, and simple filtration. (*See* Pl.'s Memo. in Support
21  of Pl.'s Mot. For Prelim. Inj. (#19) Ex. A at cols. 4:35–5:19).

22      However, Mr. Farris references several patents which were not disclosed as prior art
23  in the Patents, and which, in combination, seem to obviate the Patents. U.S. Patent No.
24  5,052,343 (the "Sushelnitski patent") relates to a self-replenishing water trough that
25  "circulate[s] the water within the trough to prevent freezing and make a noise like running
26  water to entice animals to drink." (Def.'s Opp'n (#27) Ex. F at col. 1:38–64). Furthermore,
27  U.S. Patent No. 4,285,813 (the "Stewart patent") relates to an aquarium filter which utilizes
28  a free-falling release area, intake tube, and filtration system. (Def.'s Opp'n (#27) Ex. B at cols.

1  1:61–2:61). In the '609 patent, claims 9–12, 14, and 17 (the claims at issue) reflect the basic

2  mechanism whereby water in an open container is available to animals for drinking, which is

3  channeled through an intake tube, filtered, and released back in the container in a downward,

4  free-fall fashion. (*See* Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. A at cols.

5  11:28–12:5, 12:11–15, 12:27–31). Hence, in combination, the Sushelnitski patent and the

6  Stewart patent seem to obviate the claims at issue in the '609 patent. In fact, not only do the

7  Sushelnitski patent and the Stewart patent seem to function similarly to the '609 patent, but

8  with regard to the perceived weaknesses of prior art and the method used to resolve such

9  weaknesses, there does not appear to be any substantial difference between this combination

10 of patents and the '609 patent. (*See* Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19)

11 Ex. A at cols. 3:32–4:34; Def.'s Opp'n (#27) Ex. B at col. 1:15–59, Ex. F at col. 1:8–35). For

12 instance, the Sushelnitski patent references the problem of enticing cattle to drink water,

13 which it solves by creating a trough with a continuously running water supply that falls into the

14 trough in a substantially free-fall manner. (Def.'s Opp'n (#27) Ex. F at cols. 1:8–50). Similarly,

15 the '609 patent claims to make a continuously running, free-falling waterfall device to increase

16 hydration in pets. (Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. A at col. 1:9-

17 64).

18        Finally, Veterinary Ventures has provided evidence of past success in defending the

19 validity of the Patents in support of its position that the Patents are valid. (*See* Pl.'s Memo.

20 in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. H–J). On a motion for preliminary injunction,

21 "the patent holder may use a prior adjudication of patent validity involving a different

22 defendant as evidence supporting its burden of proving likelihood of success on the merits."

23 *Hybritech Inc.*, 849 F.2d at 1452. However, past litigation history is not dispositive and the

24 district court is not bound by prior adjudication. *Id.* Here, the Sushelnitski patent and the

25 Stewart patent were not disclosed as prior art and therefore seems to be a reasonable

26 argument for patent invalidity on the basis of obviousness. Furthermore, the past history

27 provided by Veterinary Ventures merely shows a series of settlements, with no evidence of

28 a resolution reached on validity of the Patents in fully-contested proceedings. (*See* Pl.'s

1  Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. H–J).  Hence, this Court finds
2  Veterinary Ventures' litigation history unconvincing.

3          Therefore, the '609 patent is likely to be found invalid. While this Court may conclude
4  the analysis and deny the preliminary injunction of the '609 patent for invalidity due to
5  obviousness, the analysis regarding infringement is addressed briefly below.

6                              ii.      **Water Release Means**

7          The primary issue in relation to infringement of the '609 patent is the interpretation of
8  the term "water release means."  Veterinary Ventures argues for defining "water release
9  means" as "a structure, such as an outlet ramp or lip, outlet flow ramp, outlet drip ramp, simple
10  conduit, faucet, or equivalent structure that releases water into the water receptacle." (Pl.'s
11  Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) at 17:8–11). Mr. Farris argues that the
12  term "water release means" refers to a "outlet ramp" or "lip" rather than the broader definition
13  argued for by Veterinary Ventures. (*See* Def.'s Opp'n (#27) at 10:2–4).

14          Claim 12 states that the water release means:

15          comprises a downward sloping surface in contact with said water
            transportation means . . . said surface having an upper end and lower
16          end, said upper end being positioned to receive water from said fluid
            transportation means, wherein water exiting said fluid transportation
17          means runs from said upper end, across said surface, and falls free of
            said lower end, wherein water is made to substantially free fall into said
18          container.

19  (Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. A at cols. 11:55–12:5).  Claim
20  1 refers to the water release means structure as "a lip attached to said reservoir which
21  releases water into said container from a predetermined height above said container, wherein
22  water is made to substantially fall into said container . . . ." (*Id.* at col. 10:55–58). Claims 7–8
23  similarly refer to a "lip" in referencing the structure that comprises the water release means.
24  (*Id.* at col. 11:18–27).

25          Additionally, the specifications describe the water release means structure variously
26  as "outlet ramp or lip 22" or "outlet flow ramp 98 and outlet drip ramp 100." (Pl.'s Memo. in
27  Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. A at col. 7:4–5, 9:32–33, Figures 1, 5). The
28  specifications also describe the process whereby the "flow ramp 98 and outlet drip ramp 100

1  are water release means for water to emerge from reservoir 96 and fall into water receptacle

2  102." (*Id.* at col. 9:33–35).  "Outlet ramp" and "lip" are the only terms used consistently

3  throughout the specifications.    Hence,  the  structures  and  function  described  in  the

4  specifications all support an ordinary reading of the water release means to cover some sort

5  of outlet ramp or lip by which water falls in a substantially free-falling manner.

6                                    **b.    Actual Infringement**

7            Accepting for the purposes of this motion the limited definition of "water release means"

8  as some sort of outlet ramp or lip would mean that claims 9–12 are likely not being infringed

9  upon by Mr. Farris' products. This is because claims 9, 11, 12 have as a material element that

10 the water falls from the "water release means" in a substantially free-falling manner into an

11 open container, whereas Mr. Farris' product utilizes a submerged pump with a pressurized

12 nozzle that ejects water into an open container. (*See* Pl.'s Memo. in Support of Pl.'s Mot. For

13 Prelim. Inj. (#19) Ex. A at cols. 11:28–12:5, Ex. M–P; Def.'s Opp'n (#27) at 10:24–11:3).

14 Hence, while Veterinary Ventures' product uses a "water release means" powered by gravity,

15 Mr. Farris' product ejects pressurized water from a nozzle.  Since claims 10, 14, and 17

16 explicitly refer to and incorporate the structure of the "water release means" in the construction

17 of the claims, the reasoning for finding infringement unlikely with respect to claims 9, 11, and

18 12 would also apply to claims 10, 14, and 17. (*See* Pl.'s Memo. in Support of Pl.'s Mot. For

19 Prelim. Inj. (#19) Ex. A at cols. 11:28–12:5, Ex. M–P).

20          Therefore, proving infringement with respect to the '609 patent is unlikely.

21                          **2.    '934 Patent**

22          For the same reasons as above relating to the material element of free-falling water,

23 accepting for the purposes of this motion the limited definition of "water release means" as

24 some sort of outlet ramp or lip would mean that claims 1–3 and 7–14 are likely not being

25 infringed upon by Mr. Farris' products. (*See* Pl.'s Memo. in Support of Pl.'s Mot. For Prelim.

26 Inj. (#19) Ex. B at cols. 10:33–61, 11:37–12:60; Ex. Q–S).  In further support of the more

27 narrow definition of water release means, certain claims in the '934 patent also refer to the

28 water release means simply as an "outlet ramp" from which water falls in a substantially free-

                                              9

fall manner.  (*See* Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. B at cols. 10:33–53, 12:10–29).  The manner in which the water release means is referenced therefore favors a definition of water release means as "outlet ramp" or "lip".

Furthermore, Mr. Farris asserts that the patent specifications and claims are not specific enough to allow a person skilled in the art to build the innovation as designed.  (*See* Def.'s Opp'n (#27) at 14:20–5; Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. B).  While it is difficult to determine based off of the pictures and specifications whether someone skilled in the art could build the innovation as designed, it appears that Mr. Farris has, at a minimum, put forth a good faith effort to distinguish his products sufficiently to avoid infringing upon Veterinary Ventures' Patents.  For instance, as part of this effort, Mr. Farris' design incorporates a unique spout with an angled cut that allows for pressure equalization. (*See* Def.'s Opp'n (#27) at 16:13–22; Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) Ex. K at 7–8).  Further information regarding the differences between the parties' inventions would be required to determine whether the Mr. Farris' efforts to distinguish his products result in a distinct product that does not infringe upon the Patents.  However, at a minimum it appears Mr. Farris may have a viable argument in establishing that no actual infringement has taken place.

Hence, it is not clear whether the '934 patent provides enough specificity to allow someone skilled in the art to make use of the innovation, but the Court need not rely on this argument given that the interpretation of the patent claims would favor Mr. Farris' argument that no infringement has occurred.  It is the burden of Veterinary Ventures to prove otherwise in a motion for preliminary injunction.  *Titan Tire Corp.* at 1376.

**B.    Other Factors**

The remaining factors for consideration are: whether there will be irreparable harm if a preliminary injunction is not granted, a balancing of the hardships, and a consideration of the public interest.  On balance, these factors favor denying the motion for preliminary injunction.

1    Once a patentee shows a likelihood of success on the merits, irreparable harm is

2  presumed. *See, e.g., Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir.

3  1983). The presumption is rebuttable. *See, e.g., Rosemount, Inc. v. United States Int'l Trade*

4  *Comm'n*, 910 F.2d 819, 821–22 (Fed. Cir. 1990). Here, however, Veterinary Ventures has

5  been unable to establish a likelihood of success on the merits. Therefore, the presumption

6  of irreparable harm does not exist here and Veterinary Ventures' arguments relating to

7  irreparable need to be individually addressed.

8    Veterinary Ventures' arguments relating to irreparable harm refer to the sunk cost of

9  research and development, loss in market share, and the relatively high costs for customers

10  to switch between the parties' products due to the initial investment in equipment.  (Pl.'s

11  Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) at 24:8–26:28). Typically, monetary injury

12  is not considered irreparable. *See California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d

13  847, 851 (9th Cir. 2009).  However, this presumption does not exist where no damages can

14  be obtained. *Id.* at 842.  Here, while Veterinary Ventures' arguments regarding irreparable

15  injury can be addressed through the awarding of money damages, Mr. Farris' "restrictions on

16  money" seem to indicate that there is doubt as to Mr. Farris' ability to pay such money

17  damages as may become applicable.[2]  (*See* Def.'s Opp'n (#27) at 22:16–23:16); *see also*

18  *Hughes Network Sys., Inc. v. Interdigital Commc'n. Corp.*, 17 F.3d 691, 694 (4th Cir. 1994)

19  (discussing the view of some circuits that the inability of a defendant to pay a judgment may

20  make harm irreparable).  On the other hand, the Supreme Court in *Winter* held that there must

21  not simply be a possibility of irreparable harm, but that irreparable harm needed to be likely.

22  129 S. Ct. at 376.  Mr. Farris' small-scale, one-person business does not pose a substantial

23  risk of harm to Veterinary Ventures.  As mentioned during the oral hearing (#56), Veterinary

24  Ventures is a large business selling products in a substantially different price range.  The

25  _____

26  [2]Mr. Farris has not presented evidence to support his assertion that he has these "restraints on money,"
but this assertion has not been contested by Veterinary Ventures. (*See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot.

27  to Dismiss Under Rule 12(b) for Lack of Personal Jurisdiction and Improper Venue (#10) at 6 n. 3).  Rather,
Veterinary Ventures has used Mr. Farris' alleged "restraints on money" as an element of support of Veterinary

28  Ventures' own arguments. (*See* Pl.'s Memo. in Support of Pl.'s Mot. For Prelim. Inj. (#19) at 26:22–28).

1    Court acknowledges that there is a possibility that Mr. Farris' "restrictions on money" may

2    prevent recovery of monetary damages in the event of a judgment in favor of Veterinary

3    Ventures. However, Veterinary Ventures has failed to establish that irreparable harm will not

4    be merely possible, but also likely.

5        On the other hand, Mr. Farris' primary source of income comes from the sale of the

6    products at issue in this case. The sales represented by Mr. Farris' products represent a

7    small portion of the revenue generated by Veterinary Ventures. Hence, the granting of a

8    preliminary injunction would likely prove disastrous to Mr. Farris, while it might, at best, be

9    slightly harmful to Veterinary Ventures.

10       The public interest favors the protection of intellectual property in order to promote

11   innovation. However, this is true only to the extent that doing so encourages, rather than

12   restricts, further innovation. The public has "a paramount interest in seeing that patent

13   monopolies spring from backgrounds free from fraud or other inequitable conduct and that

14   such monopolies are kept within their legitimate scope." *Monsanto Co. v. Rohm & Haas Co.,*

15   456 F.2d 592, 599 (3d Cir. 1972). Mr. Farris has pointed to alleged deficiencies in the

16   products of Veterinary Ventures, and has created his products in response to a public need

17   for addressing these concerns. Such efforts to improve upon past innovations serve the

18   public interest.

19       "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

20   *v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008). Here, given the relatively low

21   volume of products sold by Mr. Farris and the disproportionately large financial burden that

22   a preliminary injunction would have on Mr. Farris, and understood in light of the public

23   interest, a preliminary injunction would not be appropriate.

24   ///

25   ///

26   ///

27   ///

28   ///

1  **V.     CONCLUSION**

2        IT IS ORDERED that Veterinary Ventures' Motion to Exceed Page Limitations of LR 7-4

3  (#32) is GRANTED.   IT IS FURTHER ORDERED that Veterinary Ventures' Motion for

4  Preliminary Injunction (#18) is DENIED.  IT IS FURTHER ORDERED that Mr. Farris' Motion

5  to Dismiss for Lack of Jurisdiction (#6) is DENIED AS MOOT.  IT IS FURTHER ORDERED

6  that Veterinary Ventures' Motion for Leave to File a Surreply (#20) is DENIED AS MOOT.

7        IT IS SO ORDERED.

8        DATED: This ____3____ day of August, 2010.

9

10

11  _____

12  Robert C. Jones
    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28